UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMY K. HUGHES,

        Plaintiff,

  v.                                        Civil Action 2:20-cv-2222
                                                  Magistrate Judge Chelsey M. Vascura

THE OHIO STATE UNIVERSITY,

        Defendant.

## OPINION AND ORDER

Plaintiff, Amy K. Hughes, brings this action against Defendant, The Ohio State University, asserting claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"), as well as a claim under the Equal Pay Act of 1963, 29 U.S.C. §206(d), *et seq.* ("EPA"). This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. §636(c), is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 32.) For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**

        I.        **BACKGROUND**

Plaintiff was hired by The Ohio State University College of Nursing IT Department in 2011 as a Systems Specialist with an initial annual salary of $37,045. (Am. Compl. ¶¶ 8, 12, ECF No. 8.) After her supervisor's retirement in January 2012, Plaintiff was promoted to Database

Solutions Developer, which involved her taking on some of her former supervisor's duties, and given a salary increase to $45,000. (*Id.* at ¶ 12.) Following her promotion, Plaintiff reported to Awais Ali ("Ali"), the Director of IT and Business Systems for the College of Nursing. (*Id.* at ¶ 16.) In April 2013, Plaintiff asked for and was granted an "off-cycle" raise to $54,000, which required Ali to obtain the Dean's approval. (Hughes Dep. 67–68, ECF No. 27.) Defendant also gave Plaintiff on-cycle raises of 1.5% and 2.1% in 2015 and 2016, respectively. (Hughes 2014 Compensation Letter, ECF No. 27-1, PAGEID #361; Hughes 2015 Compensation Letter, ECF No. 27-1, PAGEID #362.)

In 2015, Defendant hired Beny Walujo to assist in the modernization of its MS Access databases by converting them to web-based applications. (Ali Dep. 10, 23, ECF No. 29.) Walujo was initially assigned to convert five MS Access databases, including the undergraduate preceptor database. (*Id.* at 35.) Plaintiff testified that Walujo was hired to "convert [her] work" and that "deservedly he made 15, $20,000 more than me when he was hired." (Hughes Dep. 207–08, ECF No. 27.) On multiple occasions, Plaintiff expressed her desire to acquire additional skills and "shed" MS Access, which she described as an "old tool with limitations." (*See* Hughes Emails, ECF No. 27-1, PAGEID #365–67.) Plaintiff selected and attended, at Defendant's expense, two web-based database trainings that took place in September and November 2017. (Ali Decl. ¶ 7, ECF No. 32-1.)

In February 2018, Plaintiff orally requested another off-cycle pay raise. (Hughes Dep. 119, ECF No. 27.) Plaintiff made $59,652 at the time of her request. (Hughes 2017 Compensation Letter, ECF No. 27-1, PAGEID #369.) Dean Graham, the Vice Dean of the College of Nursing, rejected Plaintiff's request but agreed to revisit it if Plaintiff completed a project using her new training. (Hughes Dep. 120, ECF No. 27.) Accordingly, Ali assigned

Plaintiff to convert the undergraduate preceptor database from MS Access to a web-based database. (Ali Dep. 35, ECF No. 29.) Notably, this was one of the five database conversions initially assigned to Walujo upon his hire in 2015. (*Id.*)

Plaintiff renewed her request for a raise via email on March 27, 2018. (Hughes Dep. 124–25, ECF No. 27.) In her email to Ali, Plaintiff forwarded a 2013 email from Plaintiff to Ali that attached documents that identified salaries of male co-workers. (Warning Letter, ECF No. 27-1, PAGEID #374; Ali Dep. 31–32, ECF No. 29.) Defendant contends that Plaintiff violated Defendant's policy by accessing this information, and Plaintiff was asked to discuss the violation at a meeting with Ali and then-HR Director Melissa Gaines. (*Id.*; Gaines Dep. 10–14, ECF No. 30.) Plaintiff contends that she accessed the salary data in 2013 at Ali's request and forwarded the email in 2018 to remind Ali of their previous discussions regarding Plaintiff's compensation. (Hughes Dep. 121–22, ECF No. 27.) Regardless, Plaintiff did not receive a raise at that time.

Plaintiff received her annual performance evaluation in May 2018. Defendant contends that Plaintiff was given a low score due to her lack of progress on the undergraduate preceptor project, her poor communication skills, and her difficulty understanding the needs of clients. (College of Nursing Staff Performance Evaluation Tool, ECF No. 27-1, PAGEID #377–90.) When Plaintiff still had not completed the undergraduate preceptor project in September 2018, Ali issued a written coaching memo and gave Plaintiff a new deadline of November 26, 2018, to complete the project. (Coaching Memo, ECF No. 27-1, PAGEID #391–92.)

Defendant contends that Plaintiff did not complete the undergraduate preceptor project by the November 26, 2018 deadline. (Undergraduate Preceptor Project Final Report, ECF No. 32-3, PAGEID #803–18.) On February 5, 2019, Ali placed Plaintiff on a Performance Improvement Plan ("PIP"). (PIP Letter ECF No. 27-1, PAGEID #399–401.) As part of the PIP, Plaintiff was

assigned to convert the CEL inventory database from MS Access to a web-based database. (*Id.*) Ali believed that Plaintiff could use her prior trainings to complete the CEL inventory project and gave her 90 days, until May 6, 2019, to complete it. (*Id.*) According to Ali, the project was still incomplete by the May 6 deadline. (Undergraduate Preceptor Project Final Report, ECF No. 32-3, PAGEID #782–797.) After failing to complete the CEL inventory project within 90 days as outlined in the PIP, Plaintiff was terminated from her position on May 15, 2019. (Hughes Termination Letter, ECF No. 27-1, PAGEID #402.)

During and after her employment with Defendant, Plaintiff made several internal and external complaints that Ali treated her differently from her male colleagues. First, in April 2018, shortly after the meeting to discuss Plaintiff's allegedly unauthorized access of her colleagues' salary data, Plaintiff filed an internal discrimination complaint with Defendant's Office of Human Resources against Ali, alleging that she was "treated different from the guys." (Discrim. and Harassment Compl., ECF No. 27-1, PAGEID #375.) Ali did not become aware of this complaint until November 2018. (Ali Dep. 36, ECF No. 29.) Second, after receiving Ali's September 2018 coaching memo, Plaintiff filed another discrimination complaint, this time with Defendant's Bias Assessment and Response Team ("BART"), on October 15, 2018. (BART Compl., ECF No. 27-1, PAGEID #393-394.) Third, on January 24, 2019, less than two weeks prior to her placement on a PIP, Plaintiff filed a complaint with the Ohio Civil Rights Commission ("OCRC") and Equal Employment Opportunity Commission ("EEOC"). (Charge of Discrim., ECF No. 27-1, PAGEID #398.) Plaintiff alleged that she was being treated differently from her male co-workers, that she received a negative performance evaluation, and that she was not offered a raise because of her complaints with HR. (*Id.*) Finally, several months after her termination, on November 25, 2019, Plaintiff filed a second charge with the OCRC and EEOC,

alleging gender discrimination and retaliation, specifically referencing her PIP and termination. (Charge of Discrim., ECF No. 27-1, PAGEID #397.)

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255 (citation omitted). "But in order to survive a summary-judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, the non-movant must offer evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of

5

its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

### III. DISCUSSION

Plaintiff asserts discrimination claims under Title VII and the EPA, as well as a retaliation claim under Title VII. The Court considers each claim in turn.

**A. EPA and Title VII Discrimination Claims**

    **1. Standards for Discrimination Claims**

        **a. EPA**

Under the EPA, an employer is prohibited from paying an employee less than another "on the basis of sex" for "equal work." 29 U.S.C. 206(d)(1). Equal work is defined by the EPA as jobs that require "equal skills, effort, and responsibility" and "are performed under similar working conditions." *Id.*

Courts analyze EPA claims using a three-step burden-shifting scheme. *Schleicher v. Preferred Sols., Inc.,* 831 F.3d 746, 752–53 (6th Cir. 2016). "*First*, in order to establish a prima facie case of wage discrimination under the EPA, plaintiffs must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Id.* at 752 (cleaned up).

"*Second*, once the plaintiff establishes a prima facie case, the defendant must 'prove' that the wage differential is justified under one of the affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Id.* at 752–53 (cleaned up). "Importantly, 'a defendant bears both the burden of persuasion and production

on its affirmative defenses.'" *Id*. at 753 (quoting *Beck-Wilson v. Principi*, 441 F.3d 353, 364–65 (6th Cir. 2006)).

Finally, if the defendant successfully establishes an affirmative defense, the burden shifts back to the plaintiff to "'come forward with evidence demonstrating the existence of a triable issue of fact' regarding pretext." *Id.* (quoting *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 844 (6th Cir. 1997)). However, the burden of persuasion remains with the defendant to "demonstrate that there is no genuine issue as to whether the difference in pay is due to a factor other than sex." *Id.* (quoting *Beck–Wilson*, 441 F.3d at 365).

### b. Title VII

Plaintiff alleges that her lower salary, low performance evaluation, placement on the PIP, and subsequent termination were the result of her sex in violation of Title VII. (Am. Compl. ¶ 38, ECF No. 8). In its Motion for Summary Judgment, Defendant argues that it is entitled to judgment as a matter of law because Plaintiff cannot show that she was treated differently or received adverse employment outcomes on the basis of her sex.

Plaintiff does not offer direct evidence of discrimination and instead relies on circumstantial evidence. When a plaintiff relies on circumstantial evidence of employment discrimination under Title VII, courts analyze the claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *E.g.*, *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (applying *McDonnell Douglas* framework to a Title VII claim). The plaintiff has the initial burden of proving his or her *prima facie* case by a preponderance of the evidence. *Redlin v. Grosse Point Public School Sys.*, 921 F.3d 599, 606 (6th Cir. 2019) (citation omitted).

To make out a *prima facie* case, a plaintiff must establish that:

7

> (1) she is a member of a protected group, (2) she was subjected to an adverse employment decision, (3) she was qualified for the position, and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably.

*Vincent v. Brewer Co.,* 514 F.3d 489, 494 (6th Cir. 2007) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). "Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant 'to articulate a legitimate, nondiscriminatory reason for' the adverse employment action." *Redlin*, 921 F.3d. at 607 (quoting *Burdine*, 450 U.S. at 253).

If the defendant satisfies its burden, "the plaintiff then must prove by a preponderance of the evidence that the [stated reasons offered by the defendant] were a pretext for discrimination." *Id.* (citation omitted). Although the burdens of production shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

"A claim of unequal pay for equal work is essentially the same whether pursued under Title VII or the Equal Pay Act." *Henry v. Lennox Indus., Inc.*, 768 F.2d 746, 752 (6th Cir. 1985). However, the EPA's "equal work" requirement is a "more demanding threshold" than Title VII's "similarly situated" comparator standard. *See Kovacevich v. Kent State Univ.*, 224 F.3d 806, 828 (6th Cir. 2000).

**2. Defendant is entitled to summary judgment on Plaintiff's wage discrimination claims under the EPA and Title VII.**

It is undisputed that Plaintiff earned less money than her male co-workers. The parties dispute, however, whether Plaintiff performed "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Schleicher,* 831 F.3d at 752 (quoting *Beck-Wilson*, 441 F.3d at 359, and *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). Plaintiff's allegations focus primarily on her former supervisor, Allen Hampton, and her later-hired coworker, Walujo.

Plaintiff alleges that Hampton was paid significantly more while employed by Defendant despite Plaintiff's taking on many of Hampton's responsibilities following his retirement. (Hughes Dep. 52–54, ECF No. 27.) One undisputed difference between the two was that Plaintiff did not share Hampton's supervisory duties. (*Id.* at 54-55.) But even if their work was sufficiently similar, the burden shifts to Defendant to prove that the difference in pay was based on a factor other than sex. Here, Defendant has successfully met that burden by showing that Hampton's compensation was based on his seniority. At the time of his departure, Hampton had worked for Defendant for over twenty years. (Chavis Decl. ¶¶ 5–7, ECF No. 32-4.) At the time of her promotion to take on some of Hampton's duties, Plaintiff had been employed by Defendant for only one year. (Hughes Dep. 45–46, ECF No. 29.) Hampton earned more because he had been employed longer and had more opportunities to earn performance-based incentives. (Chavis Decl. ¶¶ 5-8, ECF No. 32-4.) Because Defendant has met its burden and Plaintiff fails to bring forth any additional "evidence demonstrating the existence of a triable issue of fact" regarding pretext, Plaintiff cannot rely on Hampton's compensation to establish an EPA wage discrimination claim. *Schleicher,* 831 F.3d at 753.

Further, Plaintiff fails to establish a *prima facie* case of wage discrimination under the EPA based upon Walujo's wage differential. Defendant hired Walujo to modernize the databases to web-based applications. In contrast, Plaintiff predominantly worked with the outdated Microsoft-based applications. (Hughes Dep. 39, 57–58, 64, ECF No. 27; Ali Dep. 23, ECF No. 29; Walujo Dep. 7–8, ECF No. 31.) Defendant highlights Plaintiff's testimony in which she makes the following concessions: "[she] was the only person who did what [she] did;" "[Walujo] never did [her] job or any aspect of [her] job;" "[she] wanted to learn what [Walujo] was doing;" and Walujo "deservedly made . . . $20,000 more than [Plaintiff] when he was

9

hired." (Hughes Dep. 60, 66, 84–85, 207–08, ECF No. 27.) The Court agrees that Plaintiff's testimony demonstrates that that Walujo possessed and employed a different and more advanced skillset than Plaintiff such that they did not perform "equal work" requiring "equal skill, effort, and responsibility." *See Schleicher,* 831 F.3d at 752; *cf. Vehar v. Cole Nat. Group, Inc.*, 251 F. App'x 993, 1001 (6th Cir. 2007) (denying summary judgment on EPA claim where the parties disputed whether the plaintiff possessed the same technical skills as her male colleagues).

Plaintiff likewise cannot make out a *prima facie* case of wage discrimination under Title VII, even under the less-demanding "similarly situated" standard. The United States Court of Appeals for the Sixth Circuit has identified three factors relevant to determining whether employees are "similarly situated" in the context of cases alleging differential disciplinary action:

> [T]o be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). The Sixth Circuit has clarified that the *Mitchell* factors do not require a plaintiff to "demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant* aspects." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (cleaned up). "[I]n applying the standard [that plaintiff must show that he is treated differently than similarly situated employees from outside the class] courts should not demand exact correlation, but should instead seek relevant similarity." *Id.* (quoting *Perry v. McGinnis*, 209 F.3d 482, 601 (6th Cir. 2000)).

Plaintiff cannot show that her position had "relevant similarity" to that of either Hampton or Walujo for the purpose of comparing their salaries. It is undisputed that Hampton's position included supervisory duties that Plaintiff never performed and that Walujo possessed technical skills regarding web-based databases that Plaintiff lacked. She therefore cannot show that she was paid less than male colleagues who were similarly situated under Title VII.

Plaintiff's deposition testimony also references three other male coworkers—Jonathan Gutzwiller, Rourick David, and Reginald McBride-Taylor—who were allegedly paid more than her. (Hughes Dep. 215, ECF No. 27.) However, Plaintiff has not made a showing that these coworkers performed equal work under the EPA or that they were similarly situated under Title VII. Plaintiff therefore cannot rely on these coworkers' wage differential to establish a wage-discrimination claim. Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's claims regarding her pay under the EPA and Title VII.

### 3. Genuine issues of material fact exist as to Plaintiff's PIP and termination claims under Title VII.

The parties do not dispute that Plaintiff can satisfy the first three elements of her Title VII *prima facie* case as to her termination. First, Plaintiff is female, and Title VII bars the discrimination on the basis of sex. Second, Plaintiff was placed on a PIP, which rises to the level of an adverse action because her PIP placed her at risk of termination. *See Kyle-Eiland v. Neff*, 408 F. App'x 933, 941 (6th Cir. 2011) (explaining that although a negative performance evaluation or placement on a PIP does not normally constitute an adverse employment action, it "may rise to the level of an adverse action if the employee can 'point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation.'" (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007) and quoting *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 789 (6th Cir. 2000)). Moreover, it is

11

undisputed that Plaintiff's termination constituted an adverse employment action. Third, Plaintiff was qualified for the position—she worked for Defendant for nine years, received various promotions, and was granted significant raises throughout her tenure.

But the parties dispute the fourth element of the *prima facie* case. After firing Plaintiff from her position, Defendant hired Corey Fuller. (Ali Dep. 15, ECF No. 29.) Defendant contends that Fuller did not replace Plaintiff because the job posting for Fuller's position was different from Plaintiff's. (Walujo Decl., ECF No. 32-6.) Plaintiff disagrees, arguing that Fuller had similar job duties, including designing, developing, and maintaining databased application to support the College of Nursing. (Fuller Position Overview, ECF No. 32-6, PAGEID #897–98; Hughes Position Description, ECF No. 27-1, PAGEID #356–57.) Defendant does not address Plaintiff's arguments regarding Fuller on reply. (*See generally* Def.'s Reply, ECF No. 42.) The undersigned concludes that Plaintiff has offered sufficient evidence to create a genuine issue of fact as to whether she was replaced by a male colleague.

Plaintiff also contends that similarly situated male employees were treated more favorably by Ali. In addition to paying male employees more (*see, infra,* III.B), Plaintiff alleges that Ali managed male co-workers less strictly. Specifically, Plaintiff states that Walujo could "abandon projects" and was not placed on a PIP or terminated when he failed to complete the undergraduate preceptor project that was later assigned to Plaintiff. (Ali Dep. 35–36, ECF No. 29.) *See Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 676 (6th Cir. 2008) ("A plaintiff's showing under [the fourth element of *prima facie* case] ordinarily [] consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends

12

motivated its discharge of the plaintiff.") (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).[1]

Because Plaintiff has offered evidence that she was replaced by a male employee and was treated differently from her male colleagues, she has established a *prima facie* case of discrimination, and the burden shifts to Defendant to successfully articulate a "legitimate and nondiscriminatory" motive for Plaintiff's termination. Defendant states that despite receiving multiple extensions, Plaintiff failed to complete the undergraduate preceptor project. (Ali Dep. 55–57, ECF No. 29.) When Plaintiff had not completed the undergraduate preceptor project by February 2019, Ali, in consultation with Human Resources, placed her on a PIP and gave her an opportunity to instead complete the CEL inventory project by May 6, 2019. (*Id.* at 57-59.) When Plaintiff failed to complete the CEL inventory project by the extended deadline, Defendant made the decision to terminate Plaintiff's employment. Defendant has therefore carried its burden to identify legitimate, non-discriminatory reasons for Plaintiff's placement on the PIP and termination.

Plaintiff may still succeed if she can prove that Defendant's nondiscriminatory motives were pretext for intentional discrimination. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Mickey v. Zeidler*

---

[1] Although Walujo's superior technical skills prevent him from being similarly situated for the purpose of comparing his and Plaintiff's salaries, the "relevant aspects" of their jobs are different when it comes to determining whether Plaintiff was fired for conduct that did not result in termination for her male colleagues. Here, the relevant aspects of their two positions are that they were both hired to perform work on behalf of Defendant under Ali's supervision, and both failed to timely complete assigned projects. It would be nonsensical for Defendant to contend that Walujo was permitted to not timely complete assigned projects, and therefore he was not similarly situated to Plaintiff, on the basis that he possessed superior technical skills.

13

*Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (quoting *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000). At the bottom of every pretext question is "whether the employer made up its stated reason to conceal intentional discrimination." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.") and *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006) ("If [the proffered reason] is not the true ground, the employer may still be innocent of discrimination; he may for example have lied to conceal a reason that was discreditable but not discriminatory.")).

Plaintiff contends that her failure to complete the undergraduate preceptor project was merely a pretext for her placement on the PIP and subsequent termination. Plaintiff points out that her co-worker, Walujo, also failed to timely complete database projects (including the undergraduate preceptor project, which was subsequently assigned to Plaintiff) but was not placed on a PIP or terminated. (Ali Dep. 71–72, ECF No. 29.) Moreover, Plaintiff was required to have her database projects fully completed within a short timeframe, while Walujo was allowed to continue work on databases for years. (Walujo Dep. 10–11, ECF No. 31.) Viewing the evidence in the light most favorable to Plaintiff, Ali treated Plaintiff and Walujo differently. Given Defendant's inconsistent application of PIPs between Plaintiff and her similarly-situated male coworker, Plaintiff has offered sufficient evidence that Defendant's purported reasons for her placement on the PIP and subsequent termination did not actually motivate, and were insufficient to motivate, its decision. Therefore, summary judgment is denied on Plaintiff's Title VII discrimination claim based on her PIP and termination.

B. **Title VII Retaliation Claim**

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must establish that:

> (1) she engaged in a protected activity; (2) her "exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action."

*Rogers v. Henry Ford Health System,* 897 F.3d 763, 775 (6th Cir. 2018) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007))).

Defendant does not dispute that when Plaintiff filed an internal HR complaint on April 24, 2018, a complaint with the Bias Assessment Response Team ("BART") on October 15, 2018, and a charge with the EEOC in January 2019, that she was engaging in a protected activity. There is also no material dispute as to the second element, Defendant's knowledge of Plaintiff's protected activity.[2] Third, it is undisputed that Ali placed Plaintiff on a PIP on February 5, 2019, and terminated her on May 15, 2019. (PIP Email ECF No. 27-1, PAGEID #399–401; Hughes Termination Letter ECF No. 27-1, PAGEID #402.)

As to the fourth element, Plaintiff can establish a causal connection between her protected activity and the PIP and resulting termination. When the protected activity and adverse action occur "very close" in time, plaintiffs can establish a causal connection based on temporal proximity. *Mickey,* 516 F.3d at 525. Typically, a gap of three months is a short enough time period to raise an inference of causal connection. *See Singfield v. Akron Metro. Hous. Auth.,* 389

---

[2] Plaintiff also contends that Ali gave her a poor performance review on May 30, 2018, which Defendant points out could not have been the result of retaliation because Ali did not learn of Plaintiff's April 2018 complaint until November 2018. The Court agrees and additionally notes that Plaintiff has not offered evidence that her May 2018 performance evaluation put her at risk of tangible employment action such that it could constitute an adverse employment action.

15

F.3d 555, 563 (6th Cir. 2004); *see also Bryson v. Regis Corp.,* 498 F.3d 561, 571 (6th Cir. 2007). Here, the gap between when Ali learned of Plaintiff's April 2018 complaint and when Ali placed her on the PIP in February 2019 was approximately three months, and less than two weeks had passed between her January 2019 EEOC charge and the February 2019 PIP. Similarly, less than four months elapsed between Plaintiff's January 2019 EEOC charge and her May 2019 termination. Given these proximities in time, it could be reasonably inferred that Ali placed Plaintiff on the PIP and terminated her employment in retaliation for her complaints against him.

Plaintiff has therefore identified evidence to establish a *prima facie* case of retaliation, and the burden shifts to Defendant to offer legitimate business reasons for Plaintiff's placement on the PIP and resulting termination. Defendant asserts that Plaintiff was placed on the PIP for poor performance—namely, her failure to timely complete the undergraduate preceptor and CEL Inventory projects. (Def.'s Mot. 14, ECF No. 32.) However, as discussed above, Plaintiff has offered evidence to demonstrate that Defendant's proffered reason for placing Plaintiff on the PIP, and her subsequent termination, was pretextual. Defendant is therefore not entitled to summary judgment on Plaintiff's Title VII retaliation claim.

## IV.    DISPOSITION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 32) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's wage discrimination claims under Title VII and the EPA are **DISMISSED**. Plaintiff's Title VII discrimination and retaliation claims based on her PIP and termination remain pending.

**IT IS SO ORDERED.**

*/s/ Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

16